## Wiedemann v. Crawford.

(Decided May 1, 1914.)

## Appeal from Campbell Circuit Court.

1. **Merger—When Will Not Result.**—A merger will not result where it is the expressed intention of the one acquiring the greater estate that his acquisition thereof shall not operate to extinguish the lesser estate held by him, or where in the absence of such expression the circumstances surrounding the transaction show that it was not his purpose that the merger should result.

2. Merger.—Not only will there be no merger where the intention is that there shall be none, but where there is an outstanding or intervening interest or equity the merger will not be declared.

RAMSEY WASHINGTON and DOLLS, TAYLOR & O'DONNELL for appellants.

JAMES C. WRIGHT and O'REAR & WILLIAMS for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Reversing.

About January, 1909, appellant, Wiedemann, being a large creditor of the Highland Hotel Company, instituted an action in the Campbell Circuit Court alleging it to be insolvent, and asking for the sale of its property and the payment of its debts. The cause was referred to the Master Commissioner for the proof of claims, and among others, appellee, Crawford, who was also a large creditor, proved his claim. There were numerous other claims proved which were allowed as valid claims against the company.

A judgment of sale was entered in the cause, and at the sale one Widrig, acting for Wiedemann and Crawford, under an agreement previously made by them, became the purchaser, and Wiedemann became his surety on the purchase money bonds.

Thereafter, all of the purchase price having been paid except about $9,000 with interest from the 8th of March, 1909, subject to a credit of something over $1,000, the court entered an order directing its Master Commissioner to convey the property to Widrig, and reserve a lien for the said unpaid purchase price, which was done accordingly by the Commissioner.

Some time later Widrig, desiring to avoid being involved in certain controversies which had arisen between Wiedemann and Crawford, conveyed the same property in fee-simple to Wiedemann, expressly reserving, however, the same lien which had been reserved in the Master Commissioner's deed to him under the order of the court.

Thereafter Crawford, learning of the conveyance from Widrig to Wiedemann, instituted an action against Wiedemann asserting his interest in the property, and such proceedings were had as resulted in another sale of the property under a judgment of the court; at this sale Crawford became the purchaser, and the court subsequently had the Master Commissioner to make him a deed for the same property, but subject, however, to the

same lien which had been previously reserved, and the Master Commissioner, accordingly, made such a deed.

After this deed was made and Crawford was in possession of the property, certain creditors of the Highland Hotel Company entered motions to require the original purchaser, Widrig, to pay into court the original unpaid purchase money for which the lien had been reserved. Thereupon Widrig filed his intervening petition setting up the above facts, and that while he had been nominally the purchaser at the first sale he had never had any beneficial interest in the property, and was at all times acting for Wiedemann and Crawford.

To this intervening petition Crawford filed an answer, which he made a cross-petition against Wiedemann, wherein he claimed that by reason of the conveyance from Widrig to Wiedemann, any interest which Wiedemann may have had in the unpaid purchase money as a general creditor of the Highland Hotel Company was merged into the greater estate taken by him under said deed.

To that cross-petition Wiedemann answered denying the merger, and alleging that it was not his purpose or intention, or the purpose or intention of any of the parties to the transaction, that his interest as a general creditor in the unpaid purchase money should be merged into the greater estate taken by him under the deed referred to.

To this answer the lower court sustained a demurrer, and Wiedemann declining to plead further it was adjudged by the court that Crawford pay to the Master Commissioner in full discharge of the lien retained all that remained unpaid thereof except such part as would, if paid in, be distributable upon the claims allowed to Wiedemann and Crawford, and directing the Master Commissioner, upon the making of such collection, to cancel the lien so retained. The effect of this judgment was to declare that appellant no longer had any interest as a creditor of the Highland Hotel Company in the fund arising from this lien that had been reserved, and to adjudge that any interest which he had previously had therein was merged in or had been extinguished by the greater estate subsequently acquired by him. From that judgment he prosecutes this appeal.

For two reasons this judgment cannot be sustained, (1) because no merger will result where it is the expressed intention of the one acquiring the greater estate

that his acquisition thereof shall not operate to extinguish the lesser estate held by him, or where in the absence of such expression the circumstances surrounding the transaction show that it was not his purpose that the merger should result; (2) because, if a merger had resulted by the acquisition of the greater estate, the subsequent action of Crawford in asserting his interest in the property, and causing another sale thereof, had the effect to revive and give new life to the claim of Wiedemann to his share of the fund represented by the lien.

Running throughout all the text books and the authorities is the prevailing idea that where it is against the expressed intention, or it is apparent that it was not the intention of the owner, or where it is manifestly against his interest, no merger will be declared. For instance, Perry on Trusts, Sec. 347, says:

"Where the legal and equitable estate in the same land becomes vested in the same person, the equitable will merge in the legal estate; for a man cannot be trustee for himself, nor hold the fee, which embraces the whole estate, and at the same time hold the several parts separate from the whole. But in order that this may be true, the two estates must be commensurate with each other; or the legal estate must be more extensive or comprehensive than the equitable.

"The equitable fee cannot merge in a partial or particular legal estate. And there will be no merger, if it is contrary to the intention of the parties."

Jones on Mortgages, Sec. 848, says:

"It is a general rule that when a legal title becomes united with the equitable title, so that the owner has the whole title the mortgage is merged by the unity of possession. But if the owner has an interest in keeping this title distinct; or if there be an independent right between the mortgage and the equity, there is no merger. To effect a merger under law, the right previously held, and the right subsequently acquired must coalesce in the same person and in the same right without any other intervening right."

Washburn on Real Property thus states the rule:

"It sometimes happens that the estates of the mortgagor and the mortgagee come together in one and the same person, and the question often arises whether the two have become merged in one, or remain still distinct interests. It is generally true that where a legal and

equitable estate in the same land come, to the person in the same right, without intervening interest outstanding in a third person, the equitable merges in the legal estate, and the latter alone remains subsisting.''

Pomeroy's Equity Jurisprudence, Section 788, says: ''Where the legal estate, for example, the fee, and an equal co-extensive equitable estate unite in the same person, the merger takes place in equity, in the absence of acts showing an intention to prevent it, as certainly and as directly as at the law. Under these circumstances merger is prima facie the equitable as well as the legal rule.''

And in Section 790:

''When the owner of the fee becomes absolutely entitled in his own right to a charge or incumbrance upon the same land, with no intervening interest or lien, the charge will at law merge in the ownership and cease to exist. Under like circumstances a merger will take place in equity, where no intention to prevent it has been expressed, and none is implied from the circumstances and the interests of the party; and a presumption in such a case arises in favor of the merger.''

And in Section 791, says:

''The equitable doctrine concerning the merger where the owner of the fee becomes entitled to the charge or incumbrance, may be stated as follows, substantially in the language of most eminent judges. Sir William Grant says: 'The question is upon the intention, actual or presumed, of the person in whom the interests are united.' Sir George Jessel says: 'In a court of equity it has always been held that the mere fact of a charge having been paid off does not decide the question whether it is extinguished.* * *' If there is no reason for keeping it alive, then equity will, in the absence of any declaration of his intention, destroy it; but if there is any reason for keeping it alive, such as the existence of another incumbrance, equity will not destroy it. In short, where the legal ownership of the land and the absolute ownership of the incumbrance becomes vested in the same person, the intention governs the merger in equity.''

Under these authorities, not only will there be no merger where the intention is that there shall be none, but it seems to be the further rule that where there is an outstanding or intervening interest or equity the merger will not be declared.

In this case, at all times after the purchase by Widrig for the benefit of Wiedemann and Crawford, Crawford had an equity in this property, and Wiedemann knew of and recognized that interest, and it is inconsistent with the situation and relations of the parties to say, that he, knowing of that interest of Crawford, intended by his purchase either at the first decretal sale through Widrig, or by accepting the deed from Widrig, intended to extinguish his rights or equities in the fund arising from the lien which had been retained.

The United States Supreme Court in Factors' & T. Ins. Co. v. Murphy, 111 U. S., 738, thus states the rule:

"Where an encumbrancer by mortgage or otherwise becomes the owner of the legal title or of the equity of redemption, the merger will not be held to take place if it be apparent that it was not the intention of the owner, or if, in the absence of any intention, said merger was against his manifest interest."

In addition to the above authorities there is in the notes to Pugh v. Sample, 39 L. R. A. (n. s.), 834, an exhaustive and instructive note dealing with the subject of "merger," and gives a number of authorities sustaining the view we have expressed.

But, if it had been the purpose in this case that a merger should result, and the interest of Wiedemann in the lien fund should be extinguished, the subsequent action of Crawford in having set aside the deed from Widrig to Wiedemann would have operated to revive the lost equity of Wiedemann in the lien fund. It would have been inequitable to permit Crawford to assert title to Wiedemann's interest in that fund (for that is the effect of it) by reason of a condition which he himself brought about. Crawford when he bought this property knew of the lien, and bought it with that charge upon it; the property having been sold subject to this lien it was necessarily a part of the purchase price, and there would be no equity in permitting him to get this property for a less price than he had agreed to pay for it by reason of some innocent mistake or careless business methods upon the part of one of the creditors of the hotel company to whom part of the lien fund might be adjudged.

The case of Pugh v. Sample (La.), 39 L. R. A. (n. s.) 834, was where a creditor holding a first mortgage on real estate for more than its value became the owner of the fee, whereupon the holder of a second mortgage as-

serted his claim upon the idea that the first mortgage had been merged upon the acceptance of the conveyance to the fee. The court in considering this question, said:

"Even, however, were it conceded that the Light judgment survives and operates as a judicial mortgage, the most that plaintiffs could claim would be that the property be sold, subject to Sample's mortgage as it existed at the date of the conveyance to him, as in such case his mortgage, which had been in condition of suspended animation, would revive, and, as it seems to be understood that the property would fall considerably short of satisfying it, plaintiffs would get nothing."

And, after quoting authorities, said:

"Which means that, whilst one cannot be, at the same time, owner and mortgagee of the same property, if the title which, apparently conveying perfect ownership, is supposed to destroy the mortgage by confusion, turns out to be no title or an imperfect title, the mortgage, which was suspended and apparently destroyed, upon the assumption of perfect ownership in the mortgage, is revived; the cause of the supposed destruction no longer existing."

Strictly speaking a merger only occurs when the holder of the lesser estate or interest by becoming the owner of the greater estate or interest, perfects in himself the full legal and equitable title, and when it may be gathered from all the facts and circumstances surrounding the transaction that such was his purpose, and that it was to his interest.

There is nothing in this case to indicate, or even suggest, that it was the intention of Wiedemann to waive or extinguish any claim he may have had in the $9,000 lien bond as a creditor of the hotel company. He accepted the deed from Widrig fully recognizing the rights of Crawford in the property conveyed, and did not deny these rights in the suit instituted by Crawford (142 Ky., 303); he accepted that deed which clearly recited the reservation of the $9,000 lien which he knew was for the benefit of the creditors of the hotel company of whom he was one; it could not have occurred to him that he was perfecting the title to the property in himself, because the record in the suit instituted by Crawford shows he recognized the interest of Crawford in the property. If he had denied the interest of Crawford a very different aspect might be put upon the matter, and a different motive ascribed to him; then it might

well have been said he was seeking to perfect the title in himself, and the merger might have followed.

But it appears he was still holding the property for himself and Crawford under their agreement, just as Widrig had been holding it for them, and in equity and good conscience there was no more merger by the deed from Widrig to Wiedemann than there was by the deed from the Master to Widrig for Wiedemann and Crawford's benefit.

To adjudge at the instance of Crawford, under these conditions, that Wiedemann could not participate as a general creditor of the hotel company in this lien fund, and thereby permit him to acquire the full title to the property at the partial expense of Wiedemann, and for a less sum than he (Crawford) agreed to pay for it would be most inequitable and unjust.

The judgment is reversed, with directions to overrule the demurrer to Wiedemann's answer to Crawford's cross-petition.