CHRISTIAN WANMAKER, HENRY R. WANMAKER and DAVID I. CHRISTIE, Executors of RICHARD D. WANMAKER, deceased, v. CORNELIA VAN BUSKIRK, PAUL VAN BUSKIRK, a minor, STEPHEN HEMMION and HANNAH ux., HARMANUS, GOETCHIUS, and FANNY, ux., and WILLIAM W. RAMSAY and MARGARET, ux.

The testator was accustomed, upon the marriage of his daughters, to advance to their husbands one hundred and fifty dollars each, and take from them an obligation for the payment of the same, without interest; with an understanding, that it was to be collected for the benefit of the children of his said daughters in case their husbands survived them; but if the wife survived the husband, payment was not to be required of his representatives, and the obligation was to be considered as cancelled.—This was strictly an advancement; a gift to be accounted for, as part of the share of the daughter, to preserve equality in the distribution of the testator's estate.

This cannot be considered a debt, the money not being wanted to satisfy claims against the estate; but the daughter having survived her husband, and the testator having devised all his personal property amongst his children, equally; to preserve such equality, this advancement must be brought in by the executor as constituting part of the estate.

But though a bond taken for this advancement, and including a farther sum paid by the testator for his son-in-law, be secured by a mortgage on his real estate, which descended to his children; it is not necessary that the money should be collected on the mortgage, merely to be paid over to the widow : the executor may consider it as part of her share of her father's estate.

*Semble.* That an advancement bears no interest.

A bond and mortgage, being sealed instruments, import, *prima facie*, a valuable consideration; yet the defendants are at liberty to inquire into the consideration; but the *onus probandi* is on them, and unless they can impeach it, the instruments must stand.

Connected with the facts, that no interest was paid and no demand made, length of time may be set up to show that nothing was due, as well as to raise a presumption of payment.

A non-claim for *twenty years*, when the parties are in the way and there is opportunity for asserting the demand, is strong evidence against the existence of a debt.

Still it is but a presumption ; and the fact that the parties interested were nearly related, and the collection of the money might have occasioned distress, and even the payment of interest inconvenience, taken in connection with the fact, that part of the money included in the mortgage was an advancement, and not to be repaid, is sufficient to repel it.

To authorize a court to say, from mere lapse of time, unless very extraordinary, that a debt never existed, there should be no repelling or explanatory circumstances : it requires a stronger case than one which will justify the court in deciding that a debt, once due, has been satisfied or released.

Yet where length of time is relied on as evidence of payment, it may be repelled by showing that the party was a near relation, or was insolvent.

The statute of limitation does not, in its terms, apply to courts of equity; but they have always felt themselves bound by its principles, and, except in matters of strict trust, and matters purely equitable, have acted in conformity with them.

If for a debt on simple contract, the creditor chooses to go into a court of equity, the defendant shall have the benefit of the statute in that court, as well as a court of law.

As to mortgages, the presumption of payment may be raised by lapse of time without interest being paid or demanded ; but what shall be a sufficient length of time to raise such presumption has not been clearly settled.

The better opinion appears to be, that such a presumption would attach at the end of *twenty years* without payment or demand of principal or interest ; but admitting this to be the rule, it is but a presumption, and may be repelled by a variety of circumstances.

The situation of the parties, the mortgagor having married the daughter of the mortgagee, and had issue, is, of itself, sufficient to repel the presumption.

As to the declarations of a deceased party, the evidence of one having better opportunity of information, and to whom the deceased, from his intimate connexion, would have been more likely to have communicated freely, is entitled to greater weight than that of a stranger.

THE pleadings present the following case. The complainants seek to recover upon a mortgage, given by Paul Van Buskirk, in his life-time, to Richard D. Wanmaker, the testator, in the penal sum of seven hundred and seventy-four dollars and seventy-two cents, conditioned for the payment of three hundred and eighty-seven dollars and thirty-six cents, in one year from the date, and

dated on the 1st day of May, 1806. They allege that upon this mortgage nothing has been paid for principal or interest; and that the mortgage itself is unsatisfied and in force.

The defendants are the heirs at law of the mortgagor, and they resist the payment of the mortgage on a variety of grounds.

In the first place, they deny that there was any thing due on the mortgage at the time of the testator's death, or that it was originally taken for the purpose of securing any actual claim against the mortgagor. They allege that Paul Van Buskirk, the mortgagor, now deceased, married Catharine, a daughter of the said Richard D. Wanmaker, the mortgagee; that the said Richard was accustomed, upon the marriage of his daughters, to advance to their husbands one hundred and fifty dollars, and take from them an obligation for the payment of the same, without interest; with an understanding that it was to be collected, for the benefit of the children of his said daughters respectively, in case their husbands survived them; but if the wife survived the husband, the payment was not to be required from their representatives, but the obligation was to be considered as cancelled. That one hundred and fifty dollars of the money mentioned in the mortgage, was for the advance made by the said testator to his son-in-law, at the time of the intermarriage with his daughter. That the mortgage was taken, as they have always understood, to secure the property for the benefit of the said daughter and her children; and to prevent the said Paul Van Buskirk, who was an intemperate man, from squandering it; and that there was never any thing actually due upon it.

In the second place, they set up the statute of limitations in bar of the claim, and pray the benefit of it, as though it had been pleaded.

Again, they allege that as the mortgage bears date on the 1st of May, 1806, and the money mentioned in it was payable on the 1st day of May, 1807; and as no payment has ever been made on the mortgage; and the mortgagor, and those holding under him, have always been in the peaceable and quiet possession of the premises; it is to be presumed that the mortgage has been in some way released or satisfied, or that it was taken and held for some purpose other than the security of money.

July, 1832.

Ex'rs of
Wanmaker
v.
Van Buskirk
et al.

Depositions and proofs were taken, which are noticed in the opinion of the court. The cause was argued, by

*P. Dickerson*, for complainants;

*J. C. Hornblower* and *E. B. D. Ogden*, for defendants.

Cases cited :—1 *Eden*, 358 ; 7 *John. C.* 113 ; 1 *Paige C.* 239 ; 6 *John. C.* 266 ; 2 *John. C.* 750 ; 1 *Paige C.* 100 ; 10 *Wheat. R.* 168, 177, *n.* ; 3 *Bro. C. C.* 289 ; 5 *John. C.* 545 ; 16 *John. R.* 214 ; 9 *Wheat.* 490, 497 ; 2 *Jac. & Walk.* 227.

THE CHANCELLOR. The evidence taken in this case shows conclusively, that it was the custom of Mr. Wanmaker, the testator, to advance to his daughters, on their marriage, the sum of sixty pounds, or one hundred and fifty dollars ; and there can be no doubt that this amount was advanced to Van Buskirk, the mortgagor, and husband of his daughter Catharine. It was his practice, also, to take something to show for the advancement, that his estate might be thereafter the better equalized and settled among his children. He gave one hundred and fifty dollars to Andrew Hemmion, who married the eldest daughter, and took from him a bond for the payment of it. He told Garret W. Hopper that he meant to do the same by his other daughters when they married ; and we find that when David I. Christie married another daughter, he gave bond for the like sum advanced to him. He afterwards told John Maysinger, another witness, that he had given to each of his daughters sixty pounds. The evidence shows, also, that this sixty pounds was included in the mortgage ; and the reason for taking the mortgage, was, that the property might be saved for the family, as Van Buskirk was a drinking man and might spend it.

This was strictly an advancement ; a gift to be accounted for ; or, as the testator expressed it, a part of the share of his daughter. It was a family arrangement by no means uncommon in our state, entered into with proper motives, designed to advance the welfare of all, and to preserve that equality which is so necessary to the peace of families. It cannot be considered as a debt, especially in this case when it is not wanted for the pay-

ment of any claims against the estate. If this were a case in which creditors were interested, it might present a different question.

The bond was, nevertheless, rightly brought into the estate by the executors. For certain purposes, it must be considered as constituting a part of the estate. The testator, by his will, divided all his personal property among his children equally. To produce this equality, it is necessary that the advancements be brought in : and such was the intention of the testator. But there is no necessity that the money be collected upon this mortgage, which is only a collateral security. The mortgaged premises have descended to the children of the mortgagor ; and it might be unjust for them to pay this money into the estate, merely that it may be paid over to the widow of the mortgagor. The executors will consider it as part of the share of Catharine the daughter ; and if she should refuse to receive it as such, the complainants have another remedy.

The principal question in this controversy relates to the residue of the consideration money mentioned in the mortgage.

The defendants contend that it was never due ; that there was no indebtedness on the part of Van Buskirk ; and, of course, that the mortgage was voluntary, and cannot now be enforced against this property. This allegation must be satisfactorily sustained on their part. The bond and mortgage are sealed instruments, and of themselves import, *prima facia*, a valuable consideration. The defendants are at liberty to inquire into this consideration. But the *onus probandi* is upon them, and unless they can impeach it, the instrument must stand.

Several circumstances are relied on by the defendants as raising a strong presumption that the mortgage was intended simply to cover the property. Among them are these : that the mortgage was not executed by the wife of the mortgagor ; that the mortgagor always remained in possession of the mortgaged premises ; that there was no demand of payment ; and that no interest was ever paid. All these are susceptible of very reasonable explanation. The security was ample for the amount, without the concurrence of the wife in the mortgage, and as she was a daughter of the mortgagee, the omission is very readily accounted for.

87

The fact that the mortgaged premises remained in possession of the mortgagor, is not entitled to much weight; of itself it proves nothing, for this is the uniform practice of the country. The only circumstances that are calculated to create any thing like doubt, are the lapse of time, connected with the facts that no interest was paid and no demand made. Length of time may be set up to show that nothing was due, as well as to raise a presumption of payment: *Christophers* v. *Sparks*, 2 *J. & W.* 233. And it is well remarked by the court in that case, that a nonclaim for twenty years, when the parties are in the way, and there is every opportunity for asserting the demand, is strong evidence against the existence of a debt. Still it is but a presumption; and the fact that in this case the parties interested are nearly related, and that the collection of the money might have occasioned distress, and even the payment of interest inconvenience; taken in connection with the circumstance that a part of the money mentioned in the mortgage was an advancement, and not to be paid, is sufficient to repel it. To authorize a court to say, from the mere lapse of time, unless that lapse should be very extraordinary, that a debt never existed, there should be no repelling or explanatory circumstances. It requires a stronger case than one which will justify the court in deciding, that a debt once due has been satisfied or released. And yet, in cases where length of time is relied on as evidence of payment, it may be repelled by showing the fact that the party was a near relation : *Hillary* v. *Waller*, 12 *Ves.* 266.

The defendants insist, however, that there is direct evidence to prove that nothing was ever due. It is shown, that Van Buskirk was an intemperate man. That the old gentleman, his father-in-law, should distrust him, and take some measures to secure the property for the family, is not at all unnatural. He well knew, that intemperance was the precursor of profligacy, degradation and ruin. The evidence of Garret W. Hopper explains why the mortgage was taken. It was that Van Buskirk should not make away with it in a drunken frolic ; but it does not prove that the mortgage was voluntary and without consideration. Wanmaker told Hopper, that he had taken a mortgage from Van Buskirk on the whole of his land, to save the property

for his wife and children. This does not necessarily mean that there was nothing due on the mortgage; it may well mean that he had, in addition to the bond for the money due, taken a mortgage on the property, which he would not have done, but for the fear that Van Buskirk would part with his property, and his family be turned out of doors. The testimony of Maysinger is susceptible of the same explanation. And although Garret M. Van Riper swears expressly, that Wanmaker told him his son-in-law did not owe him any thing, but he kept the mortgage for the children; yet I think that evidence, considering the circumstances under which it was given, is entirely overcome by that of Andrew Hemmion, who had been connected in the family, and was necessarily acquainted with its concerns, and to whom Wanmaker would be more likely to communicate on such a subject, than to a stranger. He told Hemmion that he had advanced more money to Van Buskirk; that he had helped him to money several times, and had taken a mortgage to secure the whole.

Taking all the testimony together, it is at best of doubtful character; and I do not feel willing, upon the strength of it, to declare the mortgage void for want of consideration.

The defendants insist, in the next place, that from the lapse of time the mortgage must be presumed to be paid and satisfied.

The mortgage was given on the 1st of May, 1807. The bill was filed on the 29th of March, 1830; making a period of nearly twenty-three years, during which no interest was paid, nor was the money ever demanded so far as is known.

The statute of limitations does not apply, in terms, to courts of equity; but it is well known, that they have always felt themselves bound by the principles of the statute; and except in cases of strict trust, and matters purely equitable in their nature, have acted in conformity with them. With respect to debts on simple contract, if they can be enforced in equity as well as at law, and the creditor chooses to go into a court of equity, the defendant shall have the benefit of the statute of limitations in that court as well as in a court of law. In such cases, the law of both courts is the same, and justly so, for otherwise the statute might be eluded: *Roosevelt* v. *Mark*, 6 *John. C. R.* 266.

July, 1832.

Ex'rs of
Wanmaker
v.
Van Buskirk
et al.

As it regards mortgages, the presumption of payment may be raised by lapse of time, without interest being paid, or demand made; but what shall be a sufficient length of time, has not been clearly settled.

In *Hele* v. *Hele*, 2 *Ch. Ca.* 28, a mortgage sixty years old was held to be satisfied; but there were circumstances to induce a presumption that it was paid. In 1 *Ch. Ca.* 59, *Sibon* v. *Fletcher*, the court presumed payment of a mortgage after a much shorter period, on the particular circumstances of the case. The point was raised in *Leman* v. *Newnham*, 1 *Ves.* 51, which was a suit for foreclosure. The defendant insisted, that as there had been no payment of principal or interest for twenty years, the presumption was that the mortgage was satisfied, and likened the case to an ejectment. Ld. Hardwicke said, that in common cases it was so, but not in mortgages, because the mortgagee shall be supposed continuing in possession, and the mortgagor's possession shall be his, being tenant at will to him. He said also, there was strong evidence that the money had not been paid. The next case was *Toplis* v. *Baker*, in the exchequer, 2 *Cox*, 118. The court there said, there was no general rule for presuming a mortgage satisfied from the non-payment of interest for twenty years. In *Trask* v. *White*, decided in the court of chancery, (3 *Bro. C. C.* 289,) Ld. Thurlow appeared to be of opinion, that where it was clear interest had not been paid for twenty years, and no demand made, he had always understood it raised the presumption that the principal was paid. In that case, he thought the presumption on a mortgage as strong as that at law. The cause was not decided upon that point, but it was referred to a master to inquire whether any interest had been paid. The master of the rolls, in *Christopher* v. *Sparks*, already cited, (2 *J. & W.* 235,) holds the opinion, that twenty years non-claim is strong evidence even against the existence of a debt. In reviewing the cases, he questions, and I think very justly, the doctrine held in *Toplis* v. *Baker*, and *Leman* v. *Newnham*, that a presumption of payment would not attach in favor of a mortgagor in possession, because he is considered tenant at will to the mortgagee; and supports the doctrine of Ld. Thurlow, that mortgages and bonds stand on the same footing

in respect to the presumption arising from non-payment of interest.

July, 1832.

Ex'rs of
Wanmaker
v.
Van Buskirk
et al.

In New-York, chancellor Kent decided that a mortgage of forty years standing, on which there had been neither payment nor demand of interest, should be presumed satisfied: *Giles* v. *Baremore*, 5 *John. C. R.* 545.

From all these decisions, there can be no doubt that a presumption of payment may be raised by lapse of time, against a mortgage; and the better opinion would seem to be, that such presumption would attach at the end of twenty years, by analogy to the rule relating to bonds. Chancellor Kent, in the case cited, appears to favor this opinion, and to incline, with the master of the rolls in the case of *Boehm* v. *Wood*, to put the mortgagor and mortgagee, when in possession, in the same plight. The rule of presumption has long been adopted in favor of the mortgagee; so that when he has been in possession twenty years, the mortgagor will not be let in to redeem.

I see no objection to the adoption of a rule by this court, that a lapse of twenty years, without payment or demand of principal or interest, shall raise a presumption of payment in the case of a mortgage. Our statute bars the recovery of the debt after sixteen years; and after twenty years the right of entry is gone, and the mortgage is no longer a subsisting title; why should the mortgage still be valid in a court of equity? But I am not called on to establish such a principle, or to say that the English doctrine is strictly applicable here. Admitting it to be so, and this case to be within it, it does not determine the rights of the parties. It raises a presumption that the mortgage is satisfied; and I am willing to admit that such presumption is raised in favor of the payment of this mortgage, by the lapse of twenty-three years without payment or demand of interest. It is, nevertheless, but a presumption. Standing alone, without explanation, it would prevail, and be tantamount to absolute proof, as well in equity as at law; and this, not because of any actual belief that the debt has been paid, but because it is right that possession should be quieted. But the presumption may be repelled by a variety of circumstances; and it remains to be seen whether there are any of sufficient weight to destroy it. Upon

this part of the case I entertain no doubt. The very situation of the parties is of itself sufficient to my mind. The mortgagor was a near relative; he had married the daughter of the mortgagee, and had issue. According to Ld. Erskine, in *Hillary* v. *Waller*, 12 *Ves.* 265, that alone was sufficient. The mortgagor died many years ago, leaving his wife and children in possession. They were not, in a situation to pay either principal or interest. To have exacted the payment, might have brought distress upon those who depended on this property for a support, and would have been harsh, to say the least of it. To suffer the mortgage to remain without compelling payment, was a reasonable indulgence, and ought not to be set up now for the purpose of defeating the claim. One ground for a presumption of payment, growing out of a lapse of time, is, that a man is always ready to enjoy what is his own. Whatever will repel this, will take away the presumption of payment; and for this purpose it has been held sufficient that the party was insolvent, or a near relation.

Without adverting to other circumstances that might be adduced, I feel satisfied to declare the mortgage a subsisting lien on the property, and that the complainants are entitled to recover.

Let an account be taken of the sum due.