Campbell v. Tompkins.

DAVID CAMPBELL

v.

DANIEL F. TOMPKINS and wife.

A mortgage was given by the defendant and his wife, on her lands, to secure his bond to the complainant for $2,100. This sum consisted of $1,100 in cash loaned to defendant and $1,000 which defendant voluntarily proposed should be included as compensation to the complainant for his (or his firm's) trouble and expense in collecting certain promissory notes for $7,000, given by the defendant and his partner, and bought in the market by complainant's firm. On foreclosure,— *Held*,

(1) That the act (*Rev. p. 387 § 52*) making a seal only presumptive evidence of a consideration, is a mere change in the rule of evidence, and does not, of itself, avoid a voluntary conveyance.

(2) That a mortgage may be sustained against everybody but existing creditors, although it was intended merely as a gift.

(3) That a voluntary mortgage, by a wife, of her lands to secure her husband's debt, is valid.

Bill to foreclose. On final hearing on pleadings and proofs.

*Mr. E. C. Harris*, for complainant.

*Mr. F. Adams*, for defendants.

THE CHANCELLOR.

This suit is brought to foreclose a mortgage given, October 13th, 1868, by Daniel F. Tompkins and his wife to the complainant, on land of Mrs. Tompkins, to secure the payment, according to the bond of Mr. Tompkins to the complainant, of that date, of $2,100 in one year from the date thereof, with interest, and all national, state, county, city and township taxes which might be assessed upon the money loaned and thereby secured or upon the mortgage or bond. The defence set up by the mortgagors in their answer is, that only $1,100 were lent, and the rest of the $2,100 was

Campbell v. Tompkins.

an allowance by way of compensation for the trouble and expense to which the firm of Campbell, Lane & Co. (of which the complainant was a member and for which the bond and mortgage were taken, though taken in the name of the complainant alone) had been subjected by reason of the defence made by the firm of Nichols & Tompkins (of which Mr. Tompkins was a member), against certain promissory notes put by the latter firm on the money market, and bought by Campbell, Lane & Co. The notes amounted in the aggregate to over $7,000. The result of the litigations was that Campbell, Lane & Co. recovered only what they had paid for the notes, with interest. The litigations were ended and the money for which judgment was recovered therein paid before the mortgage was given.

When the agreement for the mortgage was made, Mr. Tompkins applied to the complainant for a loan of $1,000 on mortgage of the premises described in the mortgage. Wholly of his own accord, and without suggestion from the complainant, or any member of his firm, or any one else on his or their account, Mr. Tompkins proposed that if the loan was made the mortgage would be given for such an amount as to include a sum sufficient to compensate Mr. Campbell's firm for their expense and trouble in prosecuting the suits upon the notes. This proposition was wholly voluntary on his part, and the amount of the proposed compensation ($1,000) was fixed by him.

Mr. Campbell acceded to the proposition thus made, and made the desired loan, the amount of which was, at the request of Mr. Tompkins, raised from $1,000 to $1,100, and took the mortgage. In 1876, before the commencement of this suit, the complainant bought the interest of his partners in the mortgage, so that when this suit was brought he was the sole owner of the mortgage.

By their answer, Mr. and Mrs. Tompkins insist that, as to the $1,000 included in the mortgage as compensation for expense, trouble &c., in the litigations on the notes, the mortgage was without consideration, and that, therefore,

there should be no decree for that money; or, if there should be any decree on that account, it should be for a smaller sum. They insist that $1,000 was an unreasonably large allowance on that account. Neither in the answer nor in the testimony is any fraud alleged or even hinted at. The conduct of the .complainant appears to have been entirely fair. Nor is it alleged that any manner of deceit or misrepresentation was practiced on Mrs. Tompkins, nor that she was not fully apprised of all the particulars of the transaction which resulted in the mortgage. , The only question, therefore, is, whether the defence of want of consideration is available to the mortgagors.

The seals to the bond and mortgage import a consideration, and, before the passage of the act " concerning sealed instruments," which was approved April 6th, 1875 (*Rev. p. 387*), neither a court of law or equity would allow the consideration of such instruments to be inquired into with a view to declaring the instrument void, for want of consideration, but a court of equity would do so for the purpose of ascertaining what was due upon it. *Farnum* v. *Burnett, 6 C. E. Gr. 87.*

That act provides that in every action upon a sealed instrument or where a set-off is founded upon a sealed instrument, the seal thereof shall be only presumptive evidence of a sufficient consideration, which may be rebutted as if such instrument was not sealed. That act is a mere change of the rule of evidence and does not operate to make a valuable .consideration necessary where the requisite did not exist when the contract was made. *Aller* v. *Aller, 11 Vr. 446.*

As before stated, the mortgage in this case was given in 1868, prior to the passage of that act. It cannot be doubted that even now a valid mortgage may be given where no valuable consideration exists. Otherwise, the absolute control of the owner over his property is taken away, for he would not be permitted to give it away in his life-time by deed. The mere fact that there was no consideration would

Campbell v. Tompkins.

not now render the mortgage invalid. A mortgage may be sustained as against all except creditors whose claims existed at the time of giving it, although it was intended merely as a gift; and, when executed and delivered, it is as valid as if it were based upon a full consideration, and it is not open to the objection that it is a voluntary executory agreement, but it may be enforced according to its terms as an executed, conditional transfer of the real estate mortgaged. *Brooks* v. *Dalrymple, 12 Allen 102 ; Bucklin* v. *Bucklin, 1 Abb. App. Dec. 242 ; Jones on Mort. § 614.*

In this case there was no fraud, illegality or oppression. The act of the mortgagors in giving the mortgage to secure the payment of the compensation, was entirely voluntary and was the result of Mr. Tompkins's unsolicited and uninvited proposition. He made it part of the consideration of the loan which he solicited, and it is, perhaps, not too much to say that without this inducement the loan would not have been made.

The voluntary mortgage by the wife of her land to secure the payment of her husband's bond is binding upon her not only so far as the loan is concerned, but as to the debt voluntarily created by him against himself and arising from a merely moral obligation which he acknowledged without demand or even solicitation, but solely from his sense of justice. A married woman may, with her husband, mortgage her land to secure the payment of the debt of her husband or of any other person, for the payment of which she is in no way liable and in which she has no interest. *Jones on Mort.* § *113.* And her mortgage, given to secure the payment of the bond of her husband, will not be regarded as having no validity or binding effect simply because the consideration of the bond is an obligation merely moral and not enforceable at law or in equity.

There will be a decree in accordance with these views.